08 CV 4472

Judge Hellerstein

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

HELEN HAN,

                        Plaintiff,

            -against-

CITY UNIVERSITY OF NEW YORK, CHILD
DEVELOPMENT CENTER OF THE CITY COLLEGE
OF NEW YORK, and LATRELLA THORNTON,

                        Defendants.
-------------------------------------------------------------------X



**COMPLAINT**

Jury Trial Demanded

Plaintiff, Helen Han, by her attorneys, Leeds Morelli & Brown, P.C., complaining of

Defendants herein, alleges, upon knowledge as to herself and her own actions, and upon

information and belief as to all other matters:

### JURISDICTION AND VENUE

1.    This is a civil action based upon Defendants' violations of Title VII of the Civil Rights

Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.; New York State Executive Law,

Human Rights Law, § 290 et seq.; New York City Administrative Code Title 8 et seq.;

the First and Fourteenth Amendments of the United States Constitution, as enforced

through 42 U.S.C. § 1983, et seq.; and any other cause of action that can be inferred from

the facts set forth herein.

2.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C.

§1343(3), 28 U.S.C. § 1343(4). The supplemental jurisdiction of the Court (28 U.S.C. §

1367) is invoked over state and local law causes of action.

1

3.      Venue is proper pursuant to 28 U.S.C. § 1391(b).

4.      The jurisdictional prerequisites to this lawsuit have been completed. Plaintiff filed a formal administrative complaint with the Equal Employment Opportunity Commission and was issued a Right to Sue letter dated February 13, 2008. A copy of the Right to Sue letter is attached hereto as Exhibit A.

## PARTIES

5.      Plaintiff Helen Han is was and still is a resident of New York County, New York.

6.      Defendant City University of New York ("CUNY") is a public university funded by the State of New York and the City of New York. CUNY has campuses throughout the Five Boroughs of New York City, including the City College of New York campus ("City College campus"), where Plaintiff worked. That campus is located in New York County, New York.

7.      Defendant Child Development Center of The City College of New York ("Center") is an educational facility operated by CUNY on its City College campus. Specifically, the Center is operated out of the Schiff House, located at 160 Convent Avenue New York, New York 10031.

8.      Defendant Latrella Thorton ("Thorton") was, at all relevant times, the Director of the Center and Plaintiff's immediate supervisor.

2

## FACTUAL BACKGROUND

**Plaintiff's Employment History**

9.      Han commenced her employment with Defendants in August 2001, as a teacher at the Center.

10.     Han has a Master's Degree and a New York State Teacher's Certificate.

11.     At all relevant times, Helen was the Center's only teacher to hold both a New York State teaching certificate and a Master's Degree.

12.     Throughout Han's employment with Defendants, her performance was satisfactory or better.

**Plaintiff's Membership in Protected Classes**

13.     Han is an Asian-American of Korean descent. Han's religion is Christian.

14.     At all relevant times, Han reported to Latrella Thornton ("Thornton"), the African-American director of the Center.

15.     At all relevant times, Helen was the only Asian employee at The Center.

3

16.    At all relevant times, there were three other teachers at the Center: Delia Donastorg ("Donastorg"), who is African-American; Maribel Burgos ("Burgos"), who is Hispanic; and Audrey Nicolas ("Nicolas"), who is African American.

**Denial of Pay Raise**

17.    At all relevant times, Han earned a salary of $32,000 per year.

18.    Han has never received a pay raise since she started working, despite her numerous requests to Thornton. Thornton has denied each request by Han.

19.    In contrast, the Centers' other teachers each received raises in February, 2007.

20.    Despite her credentials, Han was, throughout her employment, the lowest paid teacher at the Center.

21.    In addition, even though Han was the most qualified to be assigned to the UPK program, Thornton assigned Donastorg (who did not have the proper qualifications) to the program. Because Han was not assigned to that program, Han did not receive the attendant stipend of $280 every two weeks.

22.    Thornton also assigned Donastorg to the evening program, which provided Donastorg additional compensation.

4

23.    Moreover, Donastorg's assistant is Akin Cook ("Cook"). Cook has only a High School

Degree but earns $27,000, only $5,000 less than Helen.


24.    On or about March 1, 2007, Helen again made a formal request to Thornton for a pay

raise. On or about March 8, 2007, Thornton denied that request.


**Denial of Teaching Assistant**

25.    It is The Center's policy that each teacher is to work with a teacher's assistant.


26.    For the majority of the time Han worked at the Center, she did not have any assistant.


27.    Even though Han was doing her own work and the work an assistant would do, she was

not paid any greater compensation, even though a salary for an assistant for her was in

the Center's budget.


28.    At all relevant times, all of the other teachers at the Center had a full-time assistant

teacher.


29.    On more than one occasion, one of the other teachers lost an assistant, that assistant was

quickly replaced.


5

**Prevention of Religious Freedom**

30.    Thornton denied Han the ability to celebrate any religious holiday other than Kwanza. Specifically, Thornton forbade her to acknowledge Christmas.

31.    While Thornton forced the Center's teachers to decorate their classrooms for Kwanza, she forced Han to take down Christmas and Easter decorations and prevented Han from discussing her own religious practices.

**Retaliation**

32.    On or about March 28, 2007, Han's counsel sent a letter of representation to the Center, advising it of Ms. Han's intent to file formal charges of discrimination.

33.    On or about March 29, 2007, Han filed a charge of discrimination with the EEOC.

34.    On or about April 18, 2007, Han received a disciplinary notice from Thornton regarding two minor issues involving a child's personal toy and the eating of food in her classroom. Helen signed the notice but noted her objections in writing.

35.    In fact, such false allegations were not uncommon, as Thornton often listened to Han's teaching and conversations with parents, in order to find facts based on which Thornton could build alleged violations.

6

36.    Thornton also screamed at Han for the alleged violation regarding the toy.  Thornton never screamed at any of the other teachers for any actual or alleged violation.  In fact, Thornton paid little or no attention to the conduct of the other teachers.

37.    No similarly-situated employees of Defendants outside of Han's protected classes received such discipline for similar or the same alleged incidents.

**Termination**

38.    On or about July 11, 2007, Han received a termination letter from Thornton.  The letter stated that Han was being terminated for alleged poor job performance.

39.    Notably, the termination letter failed to specify the performance which allegedly led to the termination.

40.    In addition, other than the retaliatory discipline in April 2007, Han had not been disciplined since 2003.

41.    No similarly-situated employees of Defendants outside of Han's protected classes suffered similar termination.

**Post-Termination Harassment**

42.    In the termination letter, Han was told that she would remain on Defendants' payroll until
       August 8, 2007.

43.    However, on or about August 20, 2007, when Helen went to the Center to retrieve her
       personal belongings and to pick up her paycheck, Defendants' payroll department
       informed her that Thornton had placed a stop payment on her check.

44.    Although Han eventually received her check, she was unnecessarily forced to wait almost
       three weeks.

45.    No similarly-situated employee of Defendants outside of Han's protected classes was
       thus harassed.

## FIRST CAUSE OF ACTION AGAINST CUNY AND THE CENTER
(TITLE VII, NEW YORK STATE EXECUTIVE LAW § 296, and NEW YORK CITY
ADMINISTRATIVE CODE § 8-107)

46.    As described above, Defendants CUNY and the Center have taken adverse employment
       actions against Plaintiff, subjected her to a hostile work environment and/or maintained
       an atmosphere of adverse actions, due to her race, national origin, religion, and/or her
       good faith opposition to discriminatory practices, in violation of Title VII of the Civil
       Rights Act of 1964, New York State Executive Law § 296, and New York City
       Administrative Code § 8-107.

8

47.  By reason of said Defendants' discriminatory actions against Plaintiff, Plaintiff has suffered a loss of earnings and benefits, future earnings and benefits, great pain, mental anguish and physical injury.  Plaintiff is thus entitled to all forms of applicable compensatory damages, equitable relief, and any other damages and/or remedies permissible under law.

## SECOND CAUSE OF ACTION AGAINST CUNY AND THE CENTER
(42 U.S.C. § 1983)

48.  CUNY and the Center, while acting under color of state law, deprived Plaintiff of her constitutional rights, as secured by the First and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983.

49.  Officials of both CUNY and the Center intentionally committed, condoned, or were deliberately indifferent to the aforementioned violations of Plaintiff's constitutional rights.  Such deliberate indifference may be inferred in the following ways:

   a.  CUNY and the Center each had a custom or practice of discriminating against Plaintiff based on her race, national origin, religion, and/or good faith opposition to discriminatory practices.  The discriminatory and/or retaliatory practices were so persistent and widespread that they constitute the constructive acquiescence of policymakers.

   b.  Supervisors failed to properly investigate and address allegations of discrimination and/or retaliation.

   c.  Inadequate training/supervision was so likely to result in the discrimination and/or retaliation, that policymakers can reasonably be said to have been deliberately indifferent to the need to provide better training and supervision.

   d.  Policymakers engaged in and/or tacitly condoned the discrimination and/or retaliation.

9

50.     By reason of the foregoing, Plaintiff is entitled to all forms of equitable relief which may alleviate and/or redress the unlawful activities described above.

## CLAIMS FOR RELIEF AS AGAINST THORNTON
(NEW YORK EXECUTIVE LAW § 296(6), NEW YORK CITY ADMINISTRATIVE CODE § 8-107(6) AND 42 U.S.C. § 1983)

51.     Defendant Latrella Thornton aided, abetted, incited, compelled and/or coerced the aforementioned unlawful conduct in violation of New York State Executive Law § 296(6) and New York City Administrative Code 8-107(6).

52.     By way her discrimination and retaliation against Plaintiff, Thornton intentionally abridged and violated Plaintiff's federally protected constitutional rights secured by 42 U.S.C. §1983.

53.     By reason of the foregoing, Plaintiff has suffered a loss of earnings and benefits, future earnings and benefits, great pain, mental anguish and physical injury.  Plaintiff is thus entitled to all forms of applicable compensatory damages, equitable relief, and any other damages and/or remedies permissible under law.

WHEREFORE, Plaintiff demands judgment against all Defendants in the form of and/or for compensatory, emotional, physical, and punitive damages (where applicable), lost pay, front pay, interest, injunctive relief, and any other damages permitted by law. Plaintiff also demands judgment against defendants for each cause action and for all applicable and permissible damages, in an amount to be assessed at the time of trial. The plaintiff further seeks injunctive relief, including but not limited to, the clearing of her personnel file of any wrongful disciplinary actions, immediate reinstatement, and a permanent injunction enjoining all Defendants and their agents from any further actions abridging Plaintiff's rights. Plaintiff further demands all attorneys' fees, disbursements and other costs and all further relief, equitable or otherwise, to which Plaintiff is entitled and/or which the court deems just and proper.

Dated: Carle Place, New York
       May 12, 2008

                                    LEEDS MORELLI & BROWN, P.C.
                                    *Attorneys for Plaintiff*
                                    One Old Country Road, Suite 347
                                    Carle Place, New York 11514
                                    (516) 873-9550

                                    MATTHEW S. PORGES (MP-5826)